## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

**BEAZLEY INSURANCE COMPANY, INC,**

     Plaintiff,

     vs.

**TENDER LOVING CARE IN HOME AND TRANSPORTATION, INC**; **FABIAN GRAYSON**; and **DEENA TYLER**, as Administrator Ad Litem of the Estate of T'Niya Robinson,

     Defendants.

Civil Action No.:

## COMPLAINT FOR DECLARATORY JUDGMENT

Beazley Insurance Company, Inc. ("Beazley") files this Complaint for Declaratory Judgment and shows the Court as follows:

### I.    INTRODUCTION

1.    Beazley files this complaint for declaratory judgment regarding its rights and obligations under four insurance policies with respect to two, consolidated underlying lawsuits filed against Beazley's insured, Tender Loving Care In Home and Transportation, LLC ("TLC").

2.    The consolidated underlying lawsuits allege that TLC is liable for personal injuries that T'Niya Robinson suffered during a scalding incident that occurred on October 20, 2022. At the time, T'Niya Robinson was a minor, and her mother, Defendant Fabian Grayson, filed the underlying lawsuits as mother and next friend.[1]

---

[1]    T'Niya Robinson later died on January 23, 2025, during the pendency of the underlying lawsuits. As detailed below, Defendant Deena Tyler, Esq. was appointed as Administrator Ad Litem for the Estate of T'Niya Robinson and substituted into the underlying lawsuits as the party plaintiff in place of T'Niya Robinson.

3.     Beazley issued TLC four insurance policies over a non-continuous period between 2022 and 2025. Specifically,

A.     On April 6, 2022, Beazley issued a Medical Miscellaneous insurance policy to TLC, Policy No. V149K522PNPM ("2022 Policy"). A true and correct copy of the 2022 Policy is attached as Exhibit A. The policy period for the 2022 Policy was April 6, 2022 to August 2, 2022, because the policy was cancelled on August 2, 2022, for non-payment of the premium. A true and correct copy of the Notice of Cancellation for the 2022 Policy is attached as Exhibit B.

B.     On April 6, 2023, Beazley issued a Medical Miscellaneous insurance policy to TLC, Policy No. V162N823PNPM ("2023 Policy"). A true and correct copy of the 2023 Policy is attached as Exhibit C. The policy period for the 2023 Policy was April 6, 2023 to October 29, 2023, because the policy was cancelled on October 29, 2023, for non-payment of the premium. A true and correct copy of the Notice of Cancellation for the 2023 Policy is attached as Exhibit D. The 2023 Policy had a retroactive date of April 6, 2023.

C.     On April 17, 2024, Beazley issued a Medical Miscellaneous insurance policy to TLC, Policy No. V167IL24PNPM ("2024 Policy"), with a policy period of April 17, 2024 to April 17, 2025. A true and correct copy of the 2024 Policy is attached as Exhibit E. The 2024 Policy had a retroactive date of April 17, 2024.

D.     On April 17, 2025, Beazley issued a Miscellaneous Medical insurance policy to TLC, Policy No. V16STM25PNPM ("2025 Policy") (collectively

2

with the 2022 Policy, the 2023 Policy, and the 2024 Policy, the "Policies"). A true and correct copy of the 2025 Policy is attached as Exhibit F. The policy period for the 2025 Policy was April 17, 2025 to July 7, 2025, because the policy was cancelled on July 7, 2025, for nonpayment of the premium. A true and correct copy of the Notice of Cancellation of the 2025 Policy is attached as Exhibit G. The 2025 Policy had a retroactive date of April 17, 2024.

4.      Based on the **Policy Period**s[2] of these Policies, there were several gaps during which Beazley provided no insurance coverage to TLC. The first gap occurred from August 2, 2022 to April 6, 2023—between the 2022 Policy and the 2023 Policy. The second gap occurred from October 29, 2023 through April 17, 2024—between the 2023 Policy and the 2024 Policy. And because the 2025 Policy was cancelled on July 7, 2025, Beazley is not currently providing insurance to TLC. The gaps in coverage are shown in red for illustrative purposes below:

|      | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2022 | NO COVERAGE | | | 2022 Policy | | | | NO COVERAGE | | | | |
| 2023 | NO COVERAGE | | | 2023 Policy | | | | | | | NO COVERAGE | |
| 2024 | NO COVERAGE | | | 2024 Policy | | | | | | | | |
| 2025 | 2024 Policy | | | 2025 Policy | | | NO COVERAGE | | | | | |

5.      At the time of the October 20, 2022 scalding incident, none of Beazley's insurance policies were in effect. Rather, the **Accident** giving rise to T'Niya Robinson's injuries occurred during the gap in insurance coverage between the 2022 Policy and the 2023 Policy. As a result, the occurrence-based coverages in the Policies are not triggered because the **Accident** alleged to have caused T'Niya Robinson's personal injuries did not take place during any **Policy Period**.

---

2        Terms in bold are defined in the relevant policies discussed in greater detail below.

6.      In addition, the first complaint in the underlying lawsuits was filed against TLC on January 23, 2023. TLC was served with a copy of the that complaint on January 24, 2023, but it did not send any written notice of any **Claim** to Beazley during that **Policy Period**. In fact, TLC has not provided written notice to Beazley in any form whatsoever during any **Policy Period** or at any other time. Moreover, the alleged acts giving rise to the **Claim** all occurred before the retroactive dates in the 2023 Policy, 2024 Policy, and the 2025 Policy. As a result, the claims-made-and-reported coverage in the Policies is not triggered because (1) no Claim was first made and reported against TLC during a **Policy Period**, and (2) the alleged acts giving rise to the Claim occurred before the retroactive dates of the 2023 Policy, 2024 Policy, and the 2025 Policy.[3]

7.      Accordingly, Beazley owes no defense or indemnity coverage for the consolidated underlying lawsuits under any of the Policies it issued to TLC.

## II.    <u>THE PARTIES</u>

8.      Beazley is an insurance company incorporated under the laws of the State of Connecticut and maintains its principal place of business in the State of Connecticut.

9.      Defendant TLC is a limited liability company organized under the laws of the State of Alabama.  It has a single member, Tasheka Scott, who is domiciled in and a citizen of the State of Alabama. TLC is therefore deemed a citizen of the State of Alabama. According to the Alabama

---

[3]    As noted below, although there have been three complaints filed against TLC, they are deemed by operation of the Policies to have been made at the time of the first such Claim. Under the Policies, "[m]ultiple **Claims** arising from the same . . . acts, errors, or omissions, **Accidents** or from any continuing acts, errors, omissions . . . shall be considered a single **Claim** for the purposes of" the Policies. Further, "[a]ll such **Claims** shall be deemed to have been made at the time of the first such **Claim**." Because every complaint filed against TLC arises from the same alleged errors, omissions, and **Accident**s, they are "considered a single **Claim**" that is "deemed to have been made at the time of the first such **Claim**." As a result, the **Claim** or **Claim**s are deemed to have been made on January 24, 2023, when TLC was served with the original complaint in the underlying lawsuit and at which time there was no insurance policy in effect.

Secretary of State's business entity records, TLC may be served through its registered agent, Tasheka Scott, at its registered office address: 629 Crenshaw Street, Mobile, Alabama 36606.

10.     Defendant Fabian Grayson is named a defendant because she is a named plaintiff and claimant in the Underlying Lawsuit. Defendant Grayson is domiciled in and a citizen of the State of Alabama.

11.     Defendant Deena Tyler, Esq. is named a defendant because, in her capacity as the Administrator Ad Litem for the Estate of T'Niya Robinson ("Robinson Estate"), she is a named plaintiff and claimant in the Underlying Lawsuit after the Circuit Court of Mobile County appointed Defendant Tyler to represent the Robinson Estate's interests regarding T'Niya Robinson's pre-death personal injury claim. On June 4, 2025, the Circuit Court of Mobile County substituted Defendant Tyler as the named plaintiff in place of T'Niya Robinson in the Underlying Lawsuit. *See* Exhibit V. Defendant Tyler is domiciled in and a citizen of the State of Alabama.

III.    **JURISDICTION & VENUE**

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between Beazley and all Defendants, and the amount in controversy exceeds $75,000. *First*, there is complete diversity because Beazley is not a citizen of any state where any defendant in this action is a citizen. *Second*, the amount in controversy is satisfied because (1) the Policies each have coverage limits of $1 million per **Claim** and **Accident**, with aggregate limits of $3 million; (2) the Underlying Lawsuit alleges that T'Niya Robinson suffered significant personal injuries involving "severe third-degree burns" that are alleged to have required "extensive medical treatment" in a burn unit over a period of 10 days; (3) the Underlying Lawsuit alleges that T'Niya Robinson suffered permanent scarring that was to require future medical care; (4) the Underlying Lawsuit separately alleges that Fabian Grayson has

endured "extreme mental anguish and emotional distress as a result of the incident"; and (5) the plaintiffs in the Underlying Lawsuit allege that they have suffered damages that include "bodily harm, personal injury, permanent injury, permanent impairment, disfigurement, pain and suffering, mental anguish and emotional distress, past and future medical expenses, financial loss, lost income, inconvenience, annoyance, and loss of quality of life." Based on these allegations, the alleged damages, and the limits of the relevant Policies for which Beazley seeks a declaration of non-coverage, the amount in controversy exceeds $75,000.00.

13.    This Court has personal jurisdiction over the individual defendants, Fabian Grayson and Denna Tyler, because they are both residents of the State of Alabama. The Court also has personal jurisdiction over TLC because: (1) it is organized under the laws of the State of Alabama, (2) it is operating in the State of Alabama now and at the time of the events alleged in the Underlying Lawsuit, (3) it applied for insurance from Beazley from the State of Alabama, and (4) when applying for insurance from Bealzey for the Policies, it listed its business address as being in the State of Alabama.

14.    Venue in this District is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Underlying Lawsuit (defined below) and this Complaint occurred within Mobile County, Alabama, and the Underlying Lawsuit is pending in the Circuit Court of Mobile County, which is embraced by this District.

15.    An actual case or controversy of a justiciable nature exists between Beazley and the defendants in this action regarding the extent to which coverage exists under the Policies issued by Beazley to TLC for the claims asserted against TLC in the Underlying Lawsuit. Beazley is, therefore, entitled to bring this declaratory judgment action in this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

IV.    **THE UNDERLYING FACTS**

A.    **Coverage and Policy Terms Applicable to the Policies**

16.    The Policies provided, in relevant part:

**I. INSURING AGREEMENTS**

**A. Professional Liability**

The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses,** in excess of the Deductible, which the **Insured** shall become legally obligated to pay because of any **Claim** or **Claims** for **Personal Injury** to **Patients** or **Bodily Injury** first made against any **Insured** during the **Policy Period** and reported in writing to the Underwriters during the **Policy Period** or **Extended Reporting Period** (if applicable), arising out of any negligent act, error or omission of the **Insured** in rendering or failing to render **Professional Services** for others, on behalf of the **Named Insured** designated in Item 1. of the Declarations which occurred on or after the Retroactive Date stated in Item 7. of the Declarations.

**B. General Liability**

The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses** in excess of the Deductible, which the **Insured** shall become legally obligated to pay or assumed by the **Insured** under contract for **Personal Injury, Property Damage** or **Advertising Liability** caused by an **Accident** taking place during the **Policy Period,** except as covered under Insuring Agreement I.C., Products/Completed Operations Liability.

. . .

E. **Medical Payments**

The Underwriters will pay medical expenses, in excess of the Deductible, as described below for **Bodily Injury** caused by an **Accident:**

    1. on premises the **Named Insured** owns or rents;
    2. on ways next to the premises the **Named Insured** owns or rents; or
    3. because of the **Named Insured's** operations;

Provided that:

    1. the **Accident** takes place in the territory stated under Clause IV. and during the **Policy Period;**

2. the **Accident** is reported to the Underwriters during the **Policy Period;**
3. the expenses are incurred and reported to the Underwriters within one year of the date of the **Accident;**
4. the injured person submits to an examination, at the Underwriters' expense, by physicians of the Underwriters choosing as often as the Underwriters reasonably require.

. . .

## II. DEFENSE AND SETTLEMENT

A. The Underwriters shall have the right and duty to defend the **Insured,** subject to the Limit of Liability and all the provisions, terms and conditions of this Policy:

1. any **Claim** first made against the **Insured** seeking payment under the terms of this insurance, even if any of the allegations of the **Claim** are groundless, false or fraudulent; or

. . .

## III. PERSONS INSURED

Each of the following is an **Insured** under this Insurance to the extent set forth below:

A. the **Named Insured;**

. . .

B. an **Employee** or volunteer worker of the **Named Insured** (or the **Insured Organization** if applicable) but only while acting within the scope of his or her duties as such;
D. if the **Named Insured** is a joint venture or partnership, any partner or member with respect to his or her liability as such;

. . .

G. in relation to Insuring Agreements I.A., I.B., I.C., I.D., and I.E., any **Independent Contractor** and/or agent of the **Named Insured.** If the **Independent Contractor** is a physician, in relation to Insuring Agreements I.A., I.B., I.C., I.D., and I.E, coverage for any contracted physician is contingent on any such contracted physician being scheduled in Item 10. of the Declarations.

. . .

## VI. DEFINITIONS

Wherever used in this Policy, the bolded terms have the meaning provided:

    A. **Accident** means an event or happening, including continuous or repeated exposure to substantially the same general harmful conditions, which involves one or more persons or entities.

          . . .

    J. **Claim** means:

        1. a written demand received by any **Insured** for money or services, including the service of a suit or institution of regulatory or arbitration proceedings;

          . . .

      Multiple **Claims** arising from the same or a series of related or repeated acts, errors, or omissions, **Accidents** or from any continuing acts, errors, omissions, **Accidents** . . . shall be considered a single **Claim** for the purposes of this Policy, irrespective of the number of claimants or **Insureds** involved in the **Claim.** All such **Claims** shall be deemed to have been made at the time of the first such **Claim.**

          . . .

      PP. **Policy Period** means the period of time between the Inception Date and the effective date of termination, expiration or cancellation of this Insurance shown in Item 2. of the Declarations and specifically excludes and **Extended Reporting Period**.

          . . .

      UU. **Professional Services** means those professional services specifically identified in Item 11. of the Declarations.

          . . .

## XI. NOTICE OF CLAIM, OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM

Occurrence Coverage:

As soon as the **Insured** first becomes aware of an **Accident** which has taken place during the **Policy Period,** it shall, as soon as reasonably practicable, notify the Underwriters through persons named in Item 9. of the Declarations.

Claims Made and Reported Coverage:

A. If any **Claim** is made against the **Insured,** the **Insured** shall immediately notify the Underwriters in writing through persons named in Item 9. of the Declarations and forward every demand, notice, summons or other process received by the **Insured** or its representative. The **Insured's** duty to provide notice in accordance with this provision is a condition precedent to coverage.

. . .

## XIX. CANCELLATION

A. The **Named Insured** may cancel this Policy by surrender thereof to the Underwriters, or by mailing to the Underwriters written notice stating when thereafter the cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

Policies, Coverage Form F00517 (082015 ed) at p. 1, 2, 5, 6-7, 21, 23, 30, 31, 36, 37-38, 40, 41.

17.     In addition, the Policies contained an endorsement that added a Pediatric Care Exclusion that amended the exclusions applicable to Insuring Agreement I.A, Professional Liability to exclude coverage for "any **Claim** based upon or arising out of the treatment of any individuals under the age of 18 years old." *See* Endorsement E07217-B (082015 ed).

18.     Finally, the Policies provided the same notice on the first page of the Declarations regarding the Policies' occurrence-based and claims-made-and-reported-based coverages. That notice provided:

> THIS POLICY PROVIDES COVERAGE ON BOTH A CLAIMS MADE AND REPORTED BASIS AND AN OCCURRENCE BASIS. INSURING AGREEMENTS I.A., I.C., I.F., I.H., I.I., AND I.J., OF THIS POLICY PROVIDE COVERAGE ON A CLAIMS MADE AND REPORTED BASIS AND APPLY ONLY TO THOSE CLAIMS WHICH ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE UNDERWRITERS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD (IF APPLICABLE). INSURING AGREEMENTS I.B., I.D. AND I.E. OF THIS POLICY PROVIDE COVERAGE ON AN OCCURRENCE BASIS AND APPLY ONLY TO THOSE ACCIDENTS TAKING PLACE DURING THE POLICY PERIOD. DAMAGES AND CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE DEDUCTIBLE. CLAIMS EXPENSES UNDER THIS POLICY SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY. CERTAIN WORDS AND PHRASES WHICH APPEAR IN BOLD TYPE HAVE SPECIAL MEANING; PLEASE REFER TO CLAUSE VI., DEFINITIONS. PLEASE REVIEW THE COVERAGE AFFORDED UNDER THIS INSURANCE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

*See* Policies, Declarations at p. 1.

19.     And on the first page of the coverage form, each Policy reiterated that it provided coverage on an occurrence and claims-made-and-reported-basis:

10

**NOTICE:** This Policy provides coverage on both a Claims Made and Reported basis and an Occurrence basis. Insuring Agreements I.A., I.C., I.F., I.H., I.I., and I.J., of this Policy provide coverage on a Claims Made and Reported basis and apply only to those **Claims** which are first made against the **Insured** and reported in writing to the Underwriters during the **Policy Period** or the **Extended Reporting Period** (if applicable). Insuring Agreements I.B., I.D. and I.E. of this Policy provide coverage on an Occurrence basis and apply only to those **Accidents** taking place during the **Policy Period. Damages** and **Claims Expenses** shall be applied against the Deductible. **Claims Expenses** under this Policy shall reduce and may exhaust the Limit of Liability. Certain words and phrases which appear in bold type have special meaning; please refer to Clause VI., Definitions. Please review the coverage afforded under this insurance policy carefully and discuss the coverage hereunder with your insurance agent or broker.

*See* Policies, Coverage Form F00517 (082015 ed) at p. 1.

**B.    Coverage Timeline and Terms Unique to Each Policy**

    **1)    The 2022 Policy Period Expired on August 2, 2022.**

20.    As noted above, the 2022 Policy incepted on April 6, 2022.

21.    TLC financed its premium obligations to Beazley by entering into a premium finance agreement with First Insurance Funding. A true and correct copy of the 2022 Premium Finance Agreement is attached as Exhibit H.

22.    TLC accepted the terms of the Premium Finance Agreement as reflected in the Notice of Acceptance issued on April 12, 2022. A true and correct copy of the 2022 Notice of Acceptance is attached as Exhibit I.

23.    As part of the Premium Finance Agreement with First Insurance Funding, TLC granted First Insurance Funding a power of attorney that gave First Insurance Funding the "full power of substitution and full authority," to cancel the 2022 Policy if TLC ever failed to make payments under its agreement with First Insurance Funding. *See* Exhibit H § 6.

24.    On July 15, 2022, First Insurance Funding sent a Notice of Intent to Cancel Insurance Coverage to TLC because TLC had failed to make premium payments under its

agreement with First Insurance Funding. That notice warned that TLC's premium finance loan was past due and that, if First Insurance Funding did "not receive the past due amount prior to the scheduled cancellation date [July 30, 2022], we will exercise our rights under the law and in accordance with the terms of your Premium Finance Agreement." A true and correct copy of the Notice of Intent to Cancel Insurance Coverage under the 2022 Policy is attached as Exhibit J.

25.     On August 2, 2022, after TLC failed to pay its past due amount, First Insurance Funding sent a Notice of Cancellation under its power of attorney to TLC and Beazley. *See* Exhibit B.

26.     As a result, the 2022 Policy was cancelled in compliance with Alabama law and the 2022 Policy on August 2, 2022.

27.     Due to the cancellation, the **Policy Period** for the 2022 Policy ran from April 6, 2022 to August 2, 2022 at 12:01 a.m.

28.     TLC did not report any **Claim** or **Accident** to Beazley during the **Policy Period** of the 2022 Policy.

29.     From August 2, 2022 to April 6, 2023, TLC had no insurance with Beazley.

    **2)**    <u>**The 2023 Policy**</u>

30.     On or about April 6, 2023, TLC applied for insurance through an online agency to Beazley.

31.     The application for the 2023 Policy asked TLC, "Has any claim or suit for an error, omission or malpractice ever been made against you or your organization or any employees/staff working on your behalf?" *See* Exhibit C, Your Declarations.

32.     In response, TLC's owner, Tasheka Scott, on behalf of TLC, responded, "No." *Id.*

33.     In addition, the application for 2023 Policy also asked TLC, "Are you or any proposed insured for this insurance aware of any claim or suit, or any act, error, omission, fact, circumstance, or records request from any attorney which may result in a malpractice, general liability, or products liability claim or suit?" *See* Exhibit C, Your Declarations.

34.     In response, TLC's owner, Tasheka Scott, on behalf of TLC, responded, "No." *Id.*

35.     With the application, on behalf of TLC, Tasheka Scott certified that "all responses provided in this application are true and complete, that no material facts have been omitted, misstated or suppressed, and that all necessary inquiries have been made to ensure such." *See* Exhibit C, US Declaration.

36.     Relying on these material representations, Beazley issued coverage to TLC for the 2023 Policy.

37.     As with the 2022 Policy, TLC financed its premium obligations under the 2023 Policy to Beazley by entering into a premium finance agreement with First Insurance Funding. A true and correct copy of the 2023 Premium Finance Agreement is attached as Exhibit K.

38.     TLC accepted the terms of the Premium Finance Agreement as reflected in the Notice of Acceptance issued on April 7, 2023. A true and correct copy of the 2023 Notice of Acceptance is attached as Exhibit L.

39.     As part of the 2023 Premium Finance Agreement with First Insurance Funding, TLC granted First Insurance Funding a power of attorney that gave First Insurance Funding the "full power of substitution and full authority," to cancel the 2023 Policy if TLC ever failed to make payments under its agreement with First Insurance Funding. *See* Exhibit K, § 6.

40.     On October 17, 2023, First Insurance Funding sent a Notice of Intent to Cancel Insurance Coverage to TLC because TLC had failed to make premium payments under its agreement with First Insurance Funding. That notice warned that TLC's premium finance loan was past due and that, if First Insurance Funding did "not receive the past due amount prior to the scheduled cancellation date [October 29, 2023], we will exercise our rights under the law and in accordance with the terms of your Premium Finance Agreement." A true and correct copy of the Notice of Intent to Cancel Insurance Coverage under the 2023 Policy is attached as Exhibit M.

41.     On October 30, 2023, after TLC failed to pay its past due amount, First Insurance Funding sent a Notice of Cancellation under its power of attorney to TLC and Beazley, noting the cancellation date of October 29, 2023. *See* Exhibit D.

42.     As a result, the 2023 Policy was cancelled in compliance with Alabama law and the 2023 Policy on October 29, 2023.

43.     Because of this cancellation, the **Policy Period** for the 2023 Policy ran from April 6, 2023 to October 29, 2023 at 12:01 a.m.

44.     The Retroactive Date for the 2023 Policy was April 6, 2023. *See* Exhibit C, Declarations, Item 7.

45.     TLC did not report any **Claim** or **Accident** to Beazley during the **Policy Period** of the 2023 Policy.

46.     From October 29, 2023, to April 17, 2024, TLC had no insurance with Beazley.

    **3)**      **The 2024 Policy**

47.     On or about April 17, 2024, TLC applied for insurance through an online agency to Beazley.

48.     The application for the 2024 Policy asked TLC, "Has any claim or suit for an error, omission or malpractice ever been made against you or your organization or any employees/staff working on your behalf?" *See* Exhibit E, Your Declarations.

49.     In response, TLC's owner, Tasheka Scott, on behalf of TLC, responded, "No*." Id.*

50.     In addition, the application for 2024 Policy also asked TLC, "Are you or any proposed insured for this insurance aware of any claim or suit, or any act, error, omission, fact, circumstance, or records request from any attorney which may result in a malpractice, general liability, or products liability claim or suit?" *See* Exhibit E, Your Declarations.

51.     In response, TLC's owner, Tasheka Scott, on behalf of TLC, responded, "No." *Id.*

52.     With the application, on behalf of TLC, Tasheka Scott certified that "all responses provided in this application are true and complete, that no material facts have been omitted, misstated or suppressed, and that all necessary inquiries have been made to ensure such." *See* Exhibit E, US Declaration.

53.     Relying on these material representations, Beazley issued coverage to TLC for the 2024 Policy.

54.     The **Policy Period** for the 2024 Policy ran from April 17, 2024 to April 17, 2025. *See* Exhibit E, Declarations, Item 2.

55.     The Retroactive Date for the 2024 Policy was April 17, 2024. *See* Exhibit E, Declarations, Item 7.

56.     TLC did not report any **Claim** or **Accident** to Beazley during the **Policy Period** of the 2024 Policy.

4)      **The 2025 Policy**

57.      On or about April 17, 2025, TLC applied for insurance through an online agency to Beazley.

58.      The application for the 2025 Policy asked TLC, "Has any claim or suit for an error, omission or malpractice ever been made against you or your organization or any employees/staff working on your behalf?" *See* Exhibit F, Your Declarations.

59.      In response, TLC's owner, Tasheka Scott, on behalf of TLC, responded, "No*." Id.*

60.      In addition, the application for 2024 Policy also asked TLC, "Are you or any proposed insured for this insurance aware of any claim or suit, or any act, error, omission, fact, circumstance, or records request from any attorney which may result in a malpractice, general liability, or products liability claim or suit?" *See* Exhibit F, Your Declarations.

61.      In response, TLC's owner, Tasheka Scott, on behalf of TLC, responded, "No." *Id.*

62.      With the application, on behalf of TLC, Tasheka Scott certified that "all responses provided in this application are true and complete, that no material facts have been omitted, misstated or suppressed, and that all necessary inquiries have been made to ensure such." *See* Exhibit F, US Declaration.

63.      Relying on these material representations, Beazley issued coverage to TLC for the 2025 Policy.

64.      The Retroactive Date for the 2025 Policy was April 17, 2024. *See* Exhibit F, Declarations, Item 7.

65.      As with the 2022 Policy and the 2023 Policy, TLC financed its premium obligations to Beazley under the 2025 Policy by entering into a premium finance agreement, this time with

16

E.T.I. Financial Corporation, doing business as Home Capital ("Home Capital"). A true and correct copy of the 2025 Premium Finance Agreement is attached as Exhibit N.

66. TLC accepted the terms of the 2025 Premium Finance Agreement.

67. As part of the 2005 Premium Finance Agreement with Home Capital, TLC granted Honor Capital a power of attorney that gave Honor Capital "full power of substitution and authority and upon default to cancel the policies listed on this Agreement with full power to execute the policies and to receive unearned premiums, dividend payments and loss payments which may become payable under said policies," if TLC ever failed to make payments under its agreement with Home Capital. *See* Exhibit N § 6.

68. On June 23, 2025, Honor Capital sent a TEN (10) DAY NOTICE OF INTENT TO CANCEL to TLC because TLC had failed to make premium payments under the 2025 Premium Finance Agreement. That notice provided that Honor Capital had not received TLC's payment, and that, "[u]nless we receive your payment, TEN (10) DAYS from the date of this notice we must CANCEL YOUR INSURANCE POLICY under the terms and conditions of the Premium Finance Agreement signed by you." A true and correct copy of the TEN (10) DAY NOTICE OF INTENT TO CANCEL regarding the 2025 Policy is attached as Exhibit O.

69. On July 7, 2025, after TLC failed to pay its past due amount, Honor Capital sent a Notice of Cancellation under its power of attorney to TLC and Beazley. A true and correct copy of Honor Capital's Notice of Cancellation of the 2025 Policy is attached as Exhibit G.

70. As a result, the 2025 Policy was cancelled in compliance with Alabama law and the 2025 Policy on July 7, 2025.

71. The **Policy Period** for the 2025 Policy therefore ran from April 17, 2025 to July 7, 2025.

17

72.     TLC did not report any **Claim** or **Accident** relating to the Underlying Lawsuit to Beazley during the **Policy Period** of the 2025 Policy.

### C.    The Underlying Lawsuit

#### 1)    The First Lawsuit

73.     On January 23, 2023, Fabian Grayson, individually and as next friend of T'Niya Robinson, filed an original complaint in the Circuit Court of Mobile County, Alabama in a lawsuit styled, *Fabian Grayson, Individually and as Mother and Next Friend of Tniya Robinson. Tonea Marde Barlow et al.*, Civil Action Case No. 02-CV-2023-9001117.00 ("First Lawsuit").

74.     A true and correct copy of the original complaint in the First Lawsuit is attached as Exhibit P.

75.     The original complaint in the First Lawsuit was served on TLC on January 24, 2023. A true and correct copy of the Proof of Service filed in the First Lawsuit is attached as Exhibit Q.

76.     The original complaint in the First Lawsuit alleges, among other things:

A.      "On or about the evening of October 20, 2022, a non-medical agent, servant, or employee TLC and/or certain Fictitious Defendants, while operating within the line and scope of her employment as aforesaid, was directly responsible for the non-medical home care and safety of Tniya Robinson." *See* Exhibit P ¶ 7.

B.      "On or about the evening of October 20, 2022, said non-medical person(s) attempted to assist Tniya Robinson take a bath in her bathtub. In the process, Tniya Robinson sustained severe burns to her right foot and lower leg." *See* Exhibit P ¶ 8.

C.      "These severe burns to Tniya Robinson were caused by TLC's non-medical personnel placing and leaving her in a bathtub of running hot water." *See* Exhibit P ¶ 9.

D.      "As a result of the burns, Tniya Robinson was hospitalized and has received extensive medical treatment, for which she was hospitalized. Tniya Robinson was admitted to USA Hospital on or about October 21, 2022 and remained a patient in the burn unit for 10 days. During that time, she received extensive burn treatments including skin grafts. Tniya Robinson is

permanently scarred as a result of this incident, and will require future medical care." *See* Exhibit P ¶ 10.

77.    Based on these factual allegations, the plaintiff in the First Lawsuit—Defendant Grayson in this action—alleged claims for negligence, wantonness, negligent training, hiring, and supervision, and wanton training, hiring, and supervision against TLC on behalf of T'Niya Robinson, who was then a minor. *See* Exhibit P ¶¶ 13-42.

78.    Defendant Grayson, as plaintiff in the First Lawsuit, later filed an amended complaint in the First Lawsuit to add another defendant.

79.    Although it was served with a copy of the original complaint in the First Lawsuit on January 24, 2023, TLC never notified Beazley of the original or amended complaint filed against it in the First Lawsuit.

80.    Defendant Grayson, as plaintiff in the First Lawsuit, later moved to voluntarily dismiss her claims against TLC without prejudice, which the Circuit Court of Mobile County granted on or about June 19, 2024.

### 2)    The Second Lawsuit

81.    On August 13, 2024, T'Niya Robinson and Defendant Grayson filed a second lawsuit, styled as *T'Niya Robinson and Fabian Grayson v. Tonea Marde Barlow et al.*, Civil Action Case No. 02-CV-2024-902042 ("Second Lawsuit").

82.    The original complaint in the Second Lawsuit did not name TLC as a defendant.

83.    On October 18, 2024, T'Niya Robinson and Defendant Grayson filed an Amended Complaint in the Second Lawsuit in which it named TLC as a defendant. A true and correct copy of the Amended Complaint in the Second Lawsuit is attached as Exhibit R.

84.    On October 22, 2024, TLC was served with a copy of the Amended Complaint in the Second Lawsuit by certified mail. A true and correct copy of the Notice of Service filed in the Second

Lawsuit is attached as Exhibit R.

85. The Amended Complaint in the second lawsuit alleges, among other things:

A. "On October 20, 2022, Defendant Barlow, while operating within the line and scope of her employment as a non-medical aid, and working for TLC, is directly responsible for the non-medical home care and safety of T'niya Robinson." *See* Exhibit R ¶ 4.

B. "During the late afternoon or evening of October 20, 2022, Defendant Barlow is supposed to assist T'niya Robinson taking a bath. Defendant Barlow has never bathed T'niya prior to October 20, 2022. Barlow assists T'niya getting into the tub and sitting on a bench seat. Barlow fails to check the water temperature and runs scalding hot water in the tub. Barlow then walks out of the bathroom, leaving T'niya in the bathroom alone. Scalding water is running over T'niya's right foot and lower leg causing severe burns. While Barlow is gone, T'niya sees steam rising from the tub and calls to Barlow for help. By this point, T'niya's skin is peeling from her foot." *See* Exhibit R ¶ 10.

C. "T'Niya sustains severe third-degree scalding burns to her right foot and lower leg." *See* Exhibit R ¶ 11.

86. Based on these factual allegations, the plaintiffs in the Second Lawsuit—Defendants Grayson and now Defendant Tyler in this action—allege claims for negligence, wantonness, negligent training, hiring, and supervision, and wanton training, hiring, and supervision. *See* Exhibit R ¶¶ 17-50.

87. The **Claims** within the Amended Complaint in the Second Lawsuit involve the same series of related acts and **Accidents** that occurred on October 20, 2022, as are alleged to have occurred in the original complaint filed in the First Lawsuit on January 23, 2023.

### 3) The Lawsuits are Consolidated

88. On December 9, 2024, the Circuit Court of Mobile County consolidated the First and Second Lawsuits (collectively "Underlying Lawsuit"). A true and correct copy of the Order consolidating the cases is attached as Exhibit T.

89. In its consolidation order, the Court found that the operative complaints in both

lawsuits involved "the same parties and set of facts." *See* Exhibit T.

90.    On or about January 23, 2025, T'Niya Robinson died.

91.    On May 19, 2025, the Circuit Court of Mobile County appointed Defendant Tyler as Administrator Ad Litem for the Estate of T'Niya Robinson. A true and correct copy of the order appointing Defendant Tyler as Administrator is attached as Exhibit U.

92.    On June 4, 2025, the Circuit Court of Mobile County entered an order substituting Defendant Tyler as the named plaintiff in the Underlying Lawsuit, in place of T'Niya Robinson. A true and correct copy of the order substituting Defendant Tyler as the named plaintiff in the Underlying Lawsuit are attached as Exhibit V.

93.    The most recent, and therefore operative, complaint in the Underlying Lawsuit is the October 18, 2024 Amended Complaint, which is attached as Exhibit R.

**D.    Claims for Coverage**

94.    As noted above, TLC has never provided written notice to Beazley of any Claim, Accident, or the Underlying Lawsuit.

95.    However, counsel for T'Niya Robinson and Defendants Grayson and Tyler (as claimants in the Underlying Lawsuit) have claimed that Beazley was the insurer for TLC during the relevant time of the subject incident.

96.    Beazley now seeks a declaration that, under the terms and conditions of the Policies it issued to TLC, it owes no coverage to TLC for defense or indemnity relating to the Underlying Lawsuit.

## V.    CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT

There Is No Coverage Under The 2022 Policy Because the Accident Did Not Occur and
the Claim Was Not Made and Reported During the Policy Period

97.    Beazley re-alleges each and every allegation contained in paragraphs 1 through 96 as though fully set forth herein.

98.    As detailed above, the 2022 Policy provided separate insuring agreements for Professional Liability, General Liability, and Medical Payments coverage.

99.    No other insuring agreement in the 2022 Policy applies to provide coverage to TLC for the Underlying Lawsuit.

100.    The Professional Liability coverage is provided on a claims-made-and-reported basis, meaning that the Professional Liability coverage does not apply unless a **Claim** is "first made against any **Insured** during the **Policy Period** and reported in writing to [Beazley] during the **Policy Period** or **Extended Reporting Period** (if applicable)." *See* Exhibit A, Form F001517 (082015 ed) §§ I.A.

101.    Moreover, Professional Liability coverage extends only to any Claim "arising out of any negligent act, error or omission of the **Insured** in rendering or failing to render **Professional Services** for others, on behalf of [TLC] which occurred on or after the Retroactive Date stated in Item 7. of the Declarations." *See* Exhibit A, Form F001517 (082015 ed) §§ I.A.

102.    Further, the General Liability and Medical Payments coverage is provided on an occurrence basis, meaning that the General Liability and Medical Payments coverage does not apply unless the **Accident** giving rise to the **Claim** occurred during the **Policy Period** of the 2022 Policy. *See* Exhibit A, Form F001517 (082015 ed) §§ I.B, I.E (noting that the **Accident** must take place during the **Policy Period**).

103.    The **Policy Period** of the 2022 Policy was April 6, 2022 to August 2, 2022.

104.    The Underlying Lawsuit arises from a single **Accident** that occurred on October 20, 2022.

105.    As a result, the **Accident** giving rise to the Underlying Lawsuit did not occur during the Policy Period of the 2022 Policy.

106.    A **Claim** was first made against TLC relating to the Underlying Lawsuit when TLC was served with a copy of the original complaint in the Underlying Lawsuit on January 24, 2023.

107.    As a result, the **Claims** included within the Underlying Lawsuit were not first made against TLC during the **Policy Period** of the 2022 Policy.

108.    Further, TLC has never provided written notice to Beazley of the **Claim**s asserted in the Underlying Lawsuit during the **Policy Period** of the 2022 Policy or anytime afterwards.

109.    As a result, the **Claims** included within the Underlying Lawsuit were not reported to Beazley during the **Policy Period** of the 2022 Policy.

110.    Accordingly, Beazley is entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the General Liability or Medical Payments coverages of the 2022 Policy with respect to the claims asserted in the Underlying Lawsuit because the Underlying Lawsuit arises from an **Accident** that did not occur during the **Policy Period** of the 2022 Policy.

111.    Accordingly, Beazley is also entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the Professional Liability provision of the 2022 Policy with respect to the claims asserted by in the Underlying Lawsuit because the Underlying Lawsuit involves a **Claim** that was not first made and reported to Beazley during the **Policy Period** of the 2022 Policy.

112.    Alternatively, Beazley is also entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the Professional Liability provision of the 2022 Policy with respect to the claims asserted by in the Underlying Lawsuit because the pediatric exclusion applies.

## COUNT II – DECLARATORY JUDGMENT

There Is No Coverage Under The 2023 Policy Because the Accident Did Not Occur During the Policy Period, the Acts Alleged Occurred Before the Retroactive Dates, and the Claim Was Not Made and Reported During the Policy Period

113.    Beazley re-alleges each and every allegation contained in paragraphs 1 through 96 as though fully set forth herein.

114.    As detailed above, the 2023 Policy provided separate insuring agreements for Professional Liability, General Liability, and Medical Payments coverage.

115.    No other insuring agreement in the 2023 Policy applies to provide coverage to TLC for the Underlying Lawsuit.

116.    The Professional Liability coverage is provided on a claims-made-and-reported basis, meaning that the Professional Liability coverage does not apply unless a **Claim** is "first made against any **Insured** during the **Policy Period** and reported in writing to [Beazley] during the **Policy Period** or **Extended Reporting Period** (if applicable)." *See* Exhibit C, Form F001517 (082015 ed) §§ I.A.

117.    Moreover, Professional Liability coverage extends only to any Claim "arising out of any negligent act, error or omission of the **Insured** in rendering or failing to render **Professional Services** for others, on behalf of [TLC] which occurred on or after the Retroactive Date stated in Item 7. of the Declarations." *See* Exhibit C, Form F001517 (082015 ed) §§ I.A.

118.    Further, the General Liability and Medical Payments coverage is provided on an occurrence basis, meaning that the General Liability and Medical Payments coverage does not apply unless the **Accident** giving rise to the **Claim** occurred during the **Policy Period** of the 2022

Policy. *See* Exhibit C, Form F001517 (082015 ed) §§ I.B, I.E (noting that the **Accident** must take place during the **Policy Period**).

119.    The **Policy Period** of the 2023 Policy was April 6, 2023 to October 29, 2023.

120.    The Retroactive Date of the 2023 Policy was April 6, 2023

121.    The Underlying Lawsuit arises from a single **Accident** that occurred on October 20, 2022.

122.    As a result, the **Accident** giving rise to the Underlying Lawsuit did not occur during the **Policy Period** of the 2023 Policy and occurred before the Retroactive Date of the 2023 Policy.

123.    A **Claim** was first made against TLC relating to the Underlying Lawsuit when TLC was served with a copy of the original complaint in the Underlying Lawsuit on January 24, 2023.

124.    As a result, the **Claims** included within the Underlying Lawsuit were not first made against TLC during the **Policy Period** of the 2023 Policy.

125.    Further, TLC has never provided written notice to Beazley of the **Claim**s asserted in the Underlying Lawsuit during the **Policy Period** of the 2023 Policy or anytime afterwards.

126.    As a result, the **Claims** included within the Underlying Lawsuit were not reported to Beazley during the **Policy Period** of the 2023 Policy.

127.    Finally, the acts giving rise to the **Claim**s in the Underlying Lawsuit and the **Accident** took place before the Retroactive Date of the 2023 Policy, or April 6, 2023.

128.    Accordingly, Beazley is entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the General Liability or Medical Payments coverages of the 2023 Policy with respect to the claims asserted in the Underlying Lawsuit because the Underlying Lawsuit arises from an **Accident** that did not occur during the **Policy Period** of the 2023 Policy.

129.    Accordingly, Beazley is also entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the Professional Liability provisions of the 2023 Policy with respect to the claims asserted by in the Underlying Lawsuit because the Underlying Lawsuit (1) involves a **Claim** that was not first made and reported to Beazley during the **Policy Period** of the 2023 Policy, and (2) arises from alleged acts or omissions that occurred before the **Retroactive Date** of April 6, 2023 in the 2023 Policy.

130.    Alternatively, Beazley is also entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the Professional Liability provision of the 2023 Policy with respect to the claims asserted by in the Underlying Lawsuit because the pediatric exclusion applies.

## COUNT III – DECLARATORY JUDGMENT
There Is No Coverage Under The 2024 Policy Because the Accident Did Not Occur During the Policy Period, the Acts Alleged Occurred Before the Retroactive Dates, and the Claim Was Not Made and Reported During the Policy Period

131.    Beazley re-alleges each and every allegation contained in paragraphs 1 through 96 as though fully set forth herein.

132.    As detailed above, the 2024 Policy provided separate insuring agreements for Professional Liability, General Liability, and Medical Payments coverage.

133.    No other insuring agreement in the 2024 Policy applies to provide coverage to TLC for the Underlying Lawsuit.

134.    The Professional Liability coverage is provided on a claims-made-and-reported basis, meaning that the Professional Liability coverage does not apply unless a **Claim** is "first made against any **Insured** during the **Policy Period** and reported in writing to [Beazley] during the **Policy Period** or **Extended Reporting Period** (if applicable)." *See* Exhibit E, Form F001517 (082015 ed) §§ I.A.

135.    Moreover, Professional Liability coverage extends only to any Claim "arising out of any negligent act, error or omission of the **Insured** in rendering or failing to render **Professional Services** for others, on behalf of [TLC] which occurred on or after the Retroactive Date stated in Item 7. of the Declarations." *See* Exhibit E, Form F001517 (082015 ed) §§ I.A.

136.    Further, the General Liability and Medical Payments coverage is provided on an occurrence basis, meaning that the General Liability and Medical Payments coverage does not apply unless the **Accident** giving rise to the **Claim** occurred during the **Policy Period** of the 2022 Policy. *See* Exhibit E, Form F001517 (082015 ed) §§ I.B, I.E (noting that the **Accident** must take place during the **Policy Period**).

137.    The **Policy Period** of the 2024 Policy was April 17, 2024 to April 17, 2025.

138.    The Retroactive Date of the 2024 Policy was April 17, 2024.

139.    The Underlying Lawsuit arises from a single **Accident** that occurred on October 20, 2022.

140.    As a result, the **Accident** giving rise to the Underlying Lawsuit did not occur during the Policy Period of the 2024 Policy and occurred before the Retroactive Date of the 2024 Policy.

141.    A **Claim** was first made against TLC relating to the Underlying Lawsuit when TLC was served with a copy of the original complaint in the Underlying Lawsuit on January 24, 2023.

142.    As a result, the **Claims** included within the Underlying Lawsuit were not first made against TLC during the **Policy Period** of the 2024 Policy.

143.    Further, TLC has never provided written notice to Beazley of the **Claim**s asserted in the Underlying Lawsuit during the **Policy Period** of the 2024 Policy or anytime afterwards.

144.    As a result, the **Claims** included within the Underlying Lawsuit were not reported to Beazley during the **Policy Period** of the 2024 Policy.

145.    Finally, the acts giving rise to the **Claim**s in the Underlying Lawsuit took place before the Retroactive Date of the 2024 Policy, or April 17, 2024.

146.    Accordingly, Beazley is entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the General Liability or Medical Payments coverages of the 2024 Policy with respect to the claims asserted in the Underlying Lawsuit because the Underlying Lawsuit arises from an **Accident** that did not occur during the **Policy Period** of the 2024 Policy.

147.    Accordingly, Beazley is also entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the Professional Liability provisions of the 2024 Policy with respect to the claims asserted by in the Underlying Lawsuit because the Underlying Lawsuit (1) involves a **Claim** that was not first made and reported to Beazley during the **Policy Period** of the 2024 Policy, and (2) arises from alleged acts or omissions that occurred before the **Retroactive Date** of April 17, 2024 in the 2024 Policy.

148.    Alternatively, Beazley is also entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the Professional Liability provision of the 2024 Policy with respect to the claims asserted by in the Underlying Lawsuit because the pediatric exclusion applies.

## COUNT IV – DECLARATORY JUDGMENT
There Is No Coverage Under The 2025 Policy Because the Accident Did Not Occur During the Policy Period, the Acts Alleged Occurred Before the Retroactive Dates, and the Claim Was Not <u>Made and Reported During the Policy Period</u>

149.    Beazley re-alleges each and every allegation contained in paragraphs 1 through 96 as though fully set forth herein.

150.    As detailed above, the 2025 Policy provided separate insuring agreements for Professional Liability, General Liability, and Medical Payments coverage.

151.    No other insuring agreement in the 2025 Policy applies to provide coverage to TLC for the Underlying Lawsuit.

152.    The Professional Liability coverage is provided on a claims-made-and-reported basis, meaning that the Professional Liability coverage does not apply unless a **Claim** is "first made against any **Insured** during the **Policy Period** and reported in writing to [Beazley] during the **Policy Period** or **Extended Reporting Period** (if applicable)." *See* Exhibit F, Form F001517 (082015 ed) §§ I.A.

153.    Moreover, Professional Liability coverage extends only to any Claim "arising out of any negligent act, error or omission of the **Insured** in rendering or failing to render **Professional Services** for others, on behalf of [TLC] which occurred on or after the Retroactive Date stated in Item 7. of the Declarations." *See* Exhibit F, Form F001517 (082015 ed) §§ I.A.

154.    Further, the General Liability and Medical Payments coverage is provided on an occurrence basis, meaning that the General Liability and Medical Payments coverage does not apply unless the **Accident** giving rise to the **Claim** occurred during the **Policy Period** of the 2022 Policy. *See* Exhibit F, Form F001517 (082015 ed) §§ I.B, I.E (noting that the **Accident** must take place during the **Policy Period**).

155.    The **Policy Period** of the 2025 Policy was April 17, 2025 to July 7, 2025.

156.    The Retroactive Date of the 2024 Policy was April 17, 2024.

157.    The Underlying Lawsuit arises from a single **Accident** that occurred on October 20, 2022.

158.    As a result, the **Accident** giving rise to the Underlying Lawsuit did not occur during the Policy Period of the 2025 Policy and occurred before the Retroactive Date of the 2025 Policy.

159.    A **Claim** was first made against TLC relating to the Underlying Lawsuit when TLC was served with a copy of the original complaint in the Underlying Lawsuit on January 24, 2023.

160.    As a result, the **Claims** included within the Underlying Lawsuit were not first made against TLC during the **Policy Period** of the 2025 Policy.

161.    Further, TLC has never provided written notice to Beazley of the **Claim**s asserted in the Underlying Lawsuit during the **Policy Period** of the 2025 Policy or anytime afterwards.

162.    As a result, the **Claims** included within the Underlying Lawsuit were not reported to Beazley during the **Policy Period** of the 2025 Policy.

163.    Finally, the acts giving rise to the **Claim**s in the Underlying Lawsuit took place before the Retroactive Date of the 2025 Policy, or April 17, 2024.

164.    Accordingly, Beazley is entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the General Liability or Medical Payments coverages of the 2025 Policy with respect to the claims asserted in the Underlying Lawsuit because the Underlying Lawsuit arises from an **Accident** that did not occur during the **Policy Period** of the 2025 Policy.

165.    Accordingly, Beazley is also entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the Professional Liability provisions of the 2025 Policy with respect to the claims asserted by in the Underlying Lawsuit because the Underlying Lawsuit (1) involves a **Claim** that was not first made and reported to Beazley during the **Policy Period** of the 2024 Policy, and (2) arises from alleged acts or omissions that occurred before the **Retroactive Date** of April 17, 2024 in the 2025 Policy.

166.    Alternatively, Beazley is also entitled to a declaratory judgment that it has no duty to defend or indemnify TLC under the Professional Liability provision of the 2025 Policy with respect to the claims asserted by in the Underlying Lawsuit because the pediatric exclusion applies.

## IV.    <u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Beazley prays for judgment:

A.    That the Court declare that Beazley does not owe any duty to defend or indemnify TLC with respect to the Underlying Lawsuit under the 2022 Policy because the Accident did not occur, and the Claim was not first made and reported to Beazley during the Policy Period of the 2022 Policy;

B.    That the Court declare that Beazley does not owe any duty to defend or indemnify TLC with respect to the Underlying Lawsuit under the 2023 Policy because (1) the Accident did not occur during the Policy Period of the 2023 Policy, (2) the acts giving rise to the Claim took place before the Retroactive Date of the 2023 Policy, and (3) the Claim was not first made and reported to Beazley during the Policy Period of the 2023 Policy;

C.    That the Court declare that Beazley does not owe any duty to defend or indemnify TLC with respect to the Underlying Lawsuit under the 2024 Policy because (1) the Accident did not occur during the Policy Period of the 2024 Policy, (2) the acts giving rise to the Claim took place before the Retroactive Date of the 2024 Policy, and (3) the Claim was not first made and reported to Beazley during the Policy Period of the 2024 Policy;

D.    That the Court declare that Beazley does not owe any duty to defend or indemnify TLC with respect to the Underlying Lawsuits under the 2025 Policy because (1) the Accident did not occur during the Policy Period of the 2025 Policy, (2) the acts giving rise to the Claim took place before the Retroactive Date of the 2025 Policy,

and (3) the Claim was not first made and reported to Beazley during the Policy Period of the 2025 Policy;

E.    In the alternative, that the Court declare that Beazley does not owe any duty to defend or indemnify TLC with respect to the Underlying Lawsuits under the Professional Liability coverages in the Policies because the pediatric care exclusion applies; and,

F.    That the Court award Beazley such other and further relief as it deems just and proper.

Dated: August 11, 2025.                           By: *Joshua B. Baker*

**MAYNARD NEXSEN PC**                              **TROUTMAN PEPPER LOCKE LLP**

Joshua B. Baker                                   Kevin F. Kieffer (pro hac vice forthcoming)
1901 Sixth Avenue North                           100 Spectrum Center Drive, Suite 1500
Suite 1700                                        Irvine, CA 92618
Birmingham, Alabama 35203                         Phone: 949.622.2700
Phone:  (205) 254-1840                            Email: Kevin.Kieffer@troutman.com
Email: jbaker@maynardnexsen.com

                                                  Michael C. Gretchen (pro hac vice forthcoming)
                                                  601 Poydras Street, Suite 2660
                                                  New Orleans, LA 70130
                                                  Phone: 504.291.7785
                                                  Email: Michael.Gretchen@troutman.com

                                                  *Attorneys for Plaintiff Beazley Insurance
                                                  Company, Inc.*